```
AMOUNT $_____
SUMMONS ISSUED ___
LOCAL RULE 4 1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY CLK_____
DATE       1-7-05
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY P. SIBILIA,
    Plaintiff

CIVIL ACTION
NO.

v.

JOHN W. SNOW,
SECRETARY OF THE TREASURY,
    Defendant

05 cv 10096 PBS

**COMPLAINT**

MAGISTRATE JUDGE _____

### Introduction:

1. The Plaintiff is an employee of the United States Department of the Treasury, Internal Revenue Service (IRS), Criminal Investigation (CI). The Defendant unlawfully discriminated against the Plaintiff based on retaliation for his participation in a matter prohibited by Title VII of the Civil Rights Act of 1964 (discrimination on the basis of race, color, religion, sex and national origin) as well as other laws of the Civil Rights Act of 1991.

### Parties:

2. The Plaintiff, Anthony P. Sibilia, is a citizen of the United States and a resident of Mansfield, Massachusetts. He is now and at all relevant times has been an employee of the U.S. Department of the Treasury, Internal Revenue Service (IRS), Criminal Investigation (CI). He is employed as a Special Agent and has been so for approximately fourteen years. He is currently assigned to the Boston Field Office.

3. The Defendant, John W. Snow, is the Secretary of the Treasury of the United States. He is the current head of the federal agency (IRS) that employs Plaintiff and as such, is the appropriate named Defendant pursuant to applicable statutory provisions.

4. The Defendant, at all times relevant hereto acted through his agents/employees who are named herein and who were Plaintiff's immediate, second-line and third-line supervisors.

### Jurisdiction:

5. This suit is brought for unlawful harassment, disparate treatment and hostile work environment based on retaliation.

6. Venue is proper in the District of Massachusetts because the employment and unlawful conduct has all occurred here in Massachusetts.

7. On or about 10/25/2001, the Plaintiff initiated informal E.E.O. counseling relative to claims of harassment, disparate treatment and hostile work environment based on retaliation. On or about 12/08/2001, Plaintiff filed a formal complaint relative to said conduct.

8. On or about 07/09/2002, the Plaintiff again, initiated informal E.E.O. counseling relative to new claims of harassment, disparate treatment and hostile work environment based on retaliation. Despite the Plaintiff's request, this new complaint was not consolidated with his prior formal E.E.O. complaint (12/08/2001). Therefore, on or about 08/15/2002 the Plaintiff filed a second formal complaint relative to said conduct.

9. In regards to Plaintiff's 10/25/2001 complaint (paragraph 7), on or about 02/10/2004, a Final Order of Discrimination was rendered against the Plaintiff by the Department of the Treasury, pursuant to the Defendant's Motion for a Decision Without a Hearing (dated 12/08/2001). On Plaintiff's appeal, the E.E.O.C.'s Office of Federal Operations affirmed the E.E.O.C.'s/Department of the Treasury's decision, dated 07/26/2004. A motion to reconsider was also filed by the Plaintiff and subsequently denied by the E.E.O.C.'s Office of Federal Operations, dated 10/20/2004 and accordingly, the Plaintiff was notified of his right to file a civil action, which terminates 90 days (01/23/2005) subsequent to his receipt of said notification.

10. Relative to the Plaintiff's 07/09/2002 complaint (paragraph 8), the Department of the Treasury has not rendered a final decision. Additionally, greater than 180 days has elapsed since this complaint has been filed and the Plaintiff's right to file a civil action in this court is ripe.

## COUNT I - HARASSMENT/ HOSTILE WORK ENVIRONMENT/ DISPARATE TREATMENT BASED ON RETALIATION [08/1996 TO 02/09/2004]

11. The Plaintiff incorporates by reference and re-alleges all of paragraphs 1-10 of Plaintiffs Complaint as part of **COUNT I**.

12. In or about 08/1996, Plaintiff provided statements against his supervisor, Donato Niro (Niro) on behalf of a female co-worker (Carrie Marra) in her complaint of gender based harassment against Niro.

13. Immediately after making those statements, Niro threatened Plaintiff's life and position and he tried to force Plaintiff out of Marra's case. Likewise, Plaintiff's work was negatively re-evaluated and more closely scrutinized by Niro subsequent to his supportive statement relative to Marra's E.E.O. claim.

2

14. As a direct result of Niro's harassment/retaliation, on 09/09/1996 Plaintiff met with his second-in-line supervisor, Assistant Special in Charge (hereinafter ASAC) John Drew, his third-in-line supervisor, Special Agent in Charge (hereinafter SAC) Frederick Aufiero and E.E.O. Coordinator Marty Melecio. During the meeting Plaintiff was told that he had an ethics problem, was ordered to go back and work things out with Niro, that Niro was "old school" and that if the Plaintiff had done what he did to Niro to Aufiero, Aufiero would have Plaintiff's desk outside his office so that he could keep an eye on Plaintiff.

15. On or about 11/01/1996, Plaintiff initiated informal E.E.O. counseling alleging harassment and hostile work environment based on retaliation relative to Niro's actions as well as Aufiero's inaction and humiliation tactics. On or about 11/12/1996, Plaintiff filed a formal complaint relative to said conduct.

16. In regards to Plaintiff's above mentioned complaint (11/12/1996), he incorporated by reference to said complaint, a 17 page document detailing specific actions taken by Niro directed against him during the period he made supportive statements on behalf of Marra in support of her complaint.

17. Within days of filing the formal complaint, Plaintiff was told by the E.E.O.C. investigator assigned to the case, that there would be a swift investigation regarding his complaint since the Marra matter was already under investigation.

18. Within days of being initially contacted by the E.E.O.C. investigator, the E.E.O.C. investigator re-contacted the Plaintiff and asked if the basis for his claim of retaliation were "threatening statements", to which Plaintiff replied simply "yes."

19. Within days of Plaintiff's second contact by the E.E.O.C. investigator, he received notice from the E.E.O.C. that his complaint would not be accepted for investigation. In a letter dated 11/18/1996, from the Department of the Treasury's, Regional Complaint Center, Plaintiff was informed that his formal complaint was being dismissed because "a remark or comment unaccompanied by a concrete effort does not constitute a direct or personal deprivation sufficient to render an individual aggrieved under Title VII," and that his complaint failed to state a claim.

20. Shortly thereafter, Niro suddenly retired, which he announced in 12/1996. With Niro gone, Plaintiff did not pursue an appeal with the E.E.O.C. relative to his complaint, since he thought the entire matter would be behind him as a result of Niro's unexpected retirement. Based on information and belief, Niro's unexpected retirement was not voluntary, rather forced as a result of Marra's complaint.

21. From 1996 through 1998, Plaintiff continued to provide information and testimony favorable to Marra's E.E.O. claim, which was eventually moved to Federal Court and settled in or about 12/1998.

3

22. In 12/1996, IRS/Criminal Investigation's Brockton, MA post of duty (hereinafter POD) was closed. As a result, the agents assigned to that office including the Plaintiff, were transferred to other offices. Additionally, these agents, to include the Plaintiff, were told by the SAC at that time, Frederick Aufiero, that they would be given priority consideration when and, if the Brockton POD were to re-open.

23. Upon information and belief, at all times relevant hereto, Plaintiff's immediate and successive SACs, ASACs and Supervisory Special Agents (hereinafter SSAs) were all part of a specific chain of command (which began with Aufiero, who resented Plaintiff's actions relative to Niro) that sought to punish him relative to his involvement with E.E.O. proceedings. This chain of command was aware of the Plaintiff's E.E.O. involvement and retaliated against him for same and for not being a "team-player," by delaying his promotion for almost 3 years, and by sabotaging his work reputation, work effort and advancement efforts.

24. At all times relevant hereto, Defendant's agents/employees were aware of Plaintiff's protected activity by their own admissions and by the circumstance of being in charge while the discrimination charges were occurring. The top management "loop" directly involved with Plaintiff's employment course after Niro's forced retirement consisted of SAC Frederick Aufiero, ASAC Michael Lahey (who was promoted to the SAC position after Aufiero retired and was given many long-term acting SAC assignments by Aufiero prior to said promotion), SSA Peter Benevento (who was promoted to an ASAC position and was given many acting SAC/ASAC assignments by Lahey prior to said promotion) and Edward Delahanty and Bruce Traina (who were promoted to the position of SSA by Lahey). Each of these individuals had a direct stake in the outcome of Marra's complaint and/or Plaintiff's participation therein. They were on friendly term and were promoted in turn, by each other, successively.

25. The defendant, through these agents has demonstrated a clear pattern of continuous and on-going aggressive and confrontational harassment to discourage Plaintiff's further E.E.O. involvement and to punish Plaintiff for his prior E.E.O. involvement by the following actions:

26. From 01/1997 to 04/30/2004, Plaintiff was not re-assigned back to his original post of duty, Brockton, MA despite work related needs, space availability and numerous requests to do so. Every similarly situated agent that was transferred from the Brockton POD when it was closed in 12/1996, were eventually re-assigned back to the Brockton POD except for Plaintiff.

27. In or about 04/1998, Plaintiff's scores relative to a promotion package for a GS-13 Criminal Investigator, as advertised under vacancy announcement number CTN-8NCI013Z, were lowered, thereby preventing him from being eligible for said promotion. Based on information and belief, ASAC Michael Lahey and SSA Peter Benevento were part of the panel that ranked said promotion packages and were participants relative to the decision that ultimately lower Plaintiff's scores.

28. From 1998 through 1999 the Plaintiff was not allowed to engage in acting SSA assignments despite numerous requests and without any reasons given. Upon information and belief, these assignments would have hastened Plaintiff's promotion; other similarly situated agents were given similar opportunities merely by asking for same; Plaintiff specifically was not allowed these opportunities by his supervisor, Peter Benevento, thereby impeding his advancement opportunities.

29. On or about 04/27/1999, The Plaintiff's supervisor, Peter Benevento, did not provide Plaintiff with an above average case appraisal on a case that resulted in multiple indictments. As a result, Plaintiff was unaware of said appraisal and was not able to use that information in a positive manner for promotion and performance appraisal, thereby impeding his advancement opportunities.

30. In or about 05/1999, Plaintiff's supervisor, Peter Benevento, did not allow Plaintiff to initiate an investigation that he developed. Upon information and belief, this investigation would have aided in Plaintiff's promotion; other similarly situated agents were able to initiate similar investigations by providing their supervisors with similar information.

31. In or about 05/1999, Plaintiff's supervisor, Peter Benevento, provided Plaintiff with an *ad hoc* performance appraisal relative to a promotion announcement as advertised under vacancy announcement number 06-10-9NCI004, which did not reflect all of the Plaintiff's accomplishments, to include those identified and referenced in this claim (numbered 28-30). Based on information and belief the *ad hoc* performance appraisal was a required document necessary for said promotion and as such was used in the selection process.

32. In or about 08/1999, Plaintiff's supervisor, Peter Benevento, received a lateral assignment. At that time, Plaintiff's annual performance appraisal was due, and although Benevento supervised the Plaintiff during the period concerning said evaluation, he did not provide any substantive assistance to Plaintiff's new supervisor, Hank Chin, regarding said performance appraisal despite numerous requests. As a result, Plaintiff's annual performance evaluation did not properly reflect all of his accomplishments, to include those identified and referenced in this claim (numbered 29-31).

33. On 08/19/1999, the Plaintiff was non-selected for promotion, to that of a GS-13 Criminal Investigator, as advertised under vacancy announcement number 06-10-9NCI004, based on criteria not used for any of the other applicants.

34. From approximately 2000 to 06/2002, Peter Benevento worked closely with the SAC, Michael Lahey, and on many occasions was given long term acting ASAC and SAC assignments by Lahey. Upon information and belief, Benevento and Lahey had conversations regarding the Plaintiff's case work relative to the aforementioned

promotions, which were inaccurate and negatively affected and delayed Plaintiff's promotion.

35. In or about 01/2000, the Plaintiff was non-selected for promotion, to that of a GS-13 Criminal Investigator, as advertised under vacancy announcement number 06-10-9NCI004, based on criteria not used for any of the other applicants.

36. On 02/28/2000, the Plaintiff was non-selected for promotion, to that of a GS-13 Criminal Investigator, as advertised under vacancy announcement number 06-10-9NCI004, based on criteria not used for any of the other applicants.

37. In or about 03/2000, Plaintiff had a meeting with the SAC and ASAC, Michael Lahey and Gail Kenney respectively, regarding his non-selection for the aforementioned promotions. During that meeting Lahey questioned Plaintiff if he was pursuing an E.E.O. claim relative to same and debated having the meeting. During the meeting Lahey told Plaintiff that he should have been promoted in 1998 and informed him that a case that he recently submitted had too many hours charged to it and that it was not a difficult case. Prior to this date, Plaintiff was never informed by any of his supervisors that said case had too many hours charged to it or that it was not difficult. In fact, Plaintiff subsequently received an accolade regarding said case from another supervisor who had no connection to any of his E.E.O. complaints.

38. On 05/24/2000, the Plaintiff was non-selected for promotion, to that of a GS-13 Criminal Investigator, as advertised under vacancy announcement number 06-10-MNCI006, based on criteria not used for any of the other applicants.

39. On 10/11/2001, the Plaintiff was non-selected for re-assignment to Criminal Investigation's Brockton, MA, Post of Duty (POD), despite having been told by the SAC, Frederick Aufiero, that he would be given priority consideration when and if the Brockton POD were to re-open.

40. On or about 10/25/2001, Plaintiff initiated informal E.E.O. counseling as a result of his realization of the disparate treatment he was receiving relative the aforementioned promotions and his non-transfer to the Brockton POD and his belief that he was being discriminated against for his past E.E.O. involvement.

41. Supervisors who were not connected in any way to the Niro matter have consistently rated Plaintiff's work as above average and have recommended him for promotion and/or advancement.

42. Prior to Plaintiff's E.E.O. involvement, Plaintiff was on a promising path of advancement and promotion without any problems with SSAs, ASACs or SACs.

43. As a direct result of the Defendant's actions and inactions, Plaintiff's work reputation has suffered and he has had to start from scratch instead of being able to rely on a solid background and extensive experience for professional advancement.

44. As a direct result of the Defendant's actions, Plaintiff's management aspirations have been thwarted and halted to the point of a virtual stand-still, Plaintiff has lost considerable income, has incurred extraordinary expense, and has suffered mental pain, extensive stress and anguish.

## COUNT II - HARASSMENT/HOSTILE WORK ENVIRONMENT BASED ON RETALIATION [08/1996 TO 02/09/2004]

45. The Plaintiff incorporates by reference and re-alleges all of paragraphs 1-44 of Plaintiffs Complaint as part of **COUNT II**.

46. The Defendant, through his agents/employees has continued a clear pattern of on-going aggressive and confrontational harassment to discourage Plaintiff's further E.E.O. involvement and to punish Plaintiff for his prior E.E.O. involvement by the following actions:

47. Upon information and belief, at all times relevant hereto, the Plaintiff's chain of command was aware of Plaintiff's E.E.O. involvement and sought to punish him for same and for not being a "team-player" by delaying his promotion for approximately 3 years, and by sabotaging his work reputation, work effort and advancement efforts.

48. Specifically, Bruce Traina was made aware of Plaintiff's E.E.O. involvement, by his own admission in or about 03/2002, in a conversation with SAC Michael Lahey concerning the re-opening of the Brockton, MA POD.

49. On or about 06/03/2002, Bruce Traina made false, inaccurate statements against Plaintiff relative to E.E.O. proceedings.

50. On 06/11/2002, ASAC, Peter Benevento, reprimanded only Plaintiff concerning the presence of newspaper reporters at mandatory firearms training, when others who were similarly involved were not reprimanded and despite the fact that the Plaintiff had followed the proper procedures in obtaining authorization for same.

51. On 06/17/2002, ASAC Benevento counseled Plaintiff relative to his possession of a membership pass to a firearms training facility that had been given to Plaintiff unexpectedly and as a result of his collateral duties as Firearms Instructor/Coordinator. Despite utilizing the pass for training purposes, Benevento stated that Plaintiff had knowingly and wrongly obtained said pass.

52. On 06/24/2002, SSA Edward Delahanty subjected Plaintiff to negative comments and/or statements regarding a Special Agent Report. Upon information and belief, no agent in Plaintiff's position has ever been subjected to such demeaning, unproductive and unhelpful review of work by his/her SSA. This attitude and lack of respect toward Plaintiff was perpetuated by the Defendant.

53. On or about 07/09/2002, Plaintiff initiated informal E.E.O. counseling as a result of the treatment he was receiving from his immediate and second-line supervisors, Edward Delahanty/Bruce Traina and Peter Benevento respectively and his belief that he was being discriminated against for his past and present E.E.O. involvement.

54. On 08/05/2002, SSA Bruce Traina failed to complete and submit Plaintiff's application package for Vacancy Announcement Number CIM-02-LDP-ELP for the Leadership Development Program (LDP), which prevented Plaintiff from competing for supervisory positions.

55. On 08/07/2002, ASAC Peter Benevento and SSA Bruce Traina subjected Plaintiff to negative comments and/or statements regarding his conduct and work performance. Upon information and belief, no agent in Plaintiff's position has ever been subjected to such treatment and that this was an effort to intimidate Plaintiff regarding his E.E.O. actions. Plaintiff was told that he was not in a position to be applying for supervisory assignments because he was not a "team-player." Plaintiff was never treated in this manner prior to his E.E.O. involvement.

56. On or about 08/09/2002, Plaintiff requested and was denied transfer to another field group, out from under the supervision of SSA Traina, by SAC Joseph Galasso. Based on information and belief, other agents in Plaintiff's position had been transferred to different groups based on similar requests.

57. On or about 09/18/2002, Plaintiff's application for participation in the Educational Mentorship Program was not considered by ASAC Peter Benevento and SSA Bruce Traina. The Plaintiff was not being given the same opportunities that other similarly situated agents were taking for granted.

58. On 12/12/2002, ASAC Benevento and SSA Traina did not certify Plaintiff's application for participation in the Leadership Candidate Identification Program (LCIP), which prevents Plaintiff from participating in the LDP for supervisory positions. Although the Plaintiff has management aspirations, such goals have been systematically thwarted as a direct result of the Defendant's actions.

59. On 12/12/2002, the Plaintiff was issued written counseling by SSA Traina regarding parking his Government Owned Vehicle in the basement of the JFK Building and for submitting inaccurate monthly reports. Upon information and belief, this was another effort to strong-arm Plaintiff into becoming a "team-player" by demonstrating how much trouble can be created for him by his supervisors.

60. On 01/29/2003, SSA Traina informed Plaintiff that he was in the process of preparing a statement that he was required to provide concerning Plaintiff's E.E.O. complaints filed against him.

61. On 01/29/2003, SSA Traina informed Plaintiff that he would not be certifying his application for entry into the current LDP, for supervisory positions. Upon information and belief, this was another effort to strong-arm Plaintiff into becoming a "team-player" by demonstrating how much trouble can be created for him by his supervisors.

62. On 01/30/2003, SSA Traina subjected Plaintiff to negative comments and/or statements. Upon information and belief, no agent in Plaintiff's position has ever been subjected to such treatment and that this was an effort to intimidate Plaintiff regarding his E.E.O. actions and undertaken to discredit his career/achievements. Plaintiff was never treated in this manner prior to his E.E.O. involvement.

63. On 01/31/2003, the Plaintiff was issued written counseling by SSA Traina regarding seized currency and coin. In regards to this matter, Plaintiff was treated in a demeaning and unprofessional manner intended to humiliate him in front of his co-workers.

64. On 04/04/2003, the Plaintiff received his annual performance appraisal for the period 12/01/2001 – 02/15/2003 from SSA Traina, which was downgraded from the previous year, from Exceeds Fully Successful to Fully Successful.

65. On 06/24/2003, ASAC Carey Coss and SSA Traina did not certify the Plaintiff's application for participation in the current LCIP, which prevents the Plaintiff from participating in the LDP for supervisory positions.

66. On 06/24/2003, 08/18/2003, 08/22/2003 and 02/02/2004, Plaintiff was denied acting supervisory assignments by SSA Traina, thereby impeding his advancement opportunities.

67. On or about 09/10/2003, Plaintiff was non-selected for re-assignment to IRS, Criminal Investigation's POD, located in Brockton, MA, by SAC Joseph Galasso, despite space availability. Every agent who had been transferred from the Brockton POD in 12/1996 (when it closed), had been since re-assigned to that office, except for Plaintiff.

68. On 01/22/2004, Plaintiff's annual performance appraisal for the period 02/16/2003-09/30/2003 was rated at Fully Successful (a rating down-grade from previous appraisals) by SSA Traina.

69. On 01/27/2004, Plaintiff received a Case Appraisal with a narrative containing false, erroneous and misleading statements from SSA Traina.

70. On 02/03/2004, ASAC David Bergan and SSA Traina did not certify the Plaintiff's application for participation in the current LCIP, which prevents Plaintiff from participating in the LDP for supervisory positions;

71. On or about 02/09/2004, Plaintiff was not allowed to apply for a SSA vacancy announcement in his field office, due to his ineligibility to participate in the LCIP/LDP.

## COUNT III - DISPARATE TREATMENT BASED ON RETALIATION [08/1996 TO 05/21/2004]

72. The Plaintiff incorporates by reference and re-alleges all of paragraphs 1-71 of Plaintiffs Complaint as part of **COUNT III**.

73. The Plaintiff does not know one day from the next where he stands professionally.

74. On 04/19/2004, ASAC David Bergan did not certify Plaintiff's application for an *ad hoc* supervisory assignment. Based on information and belief, Plaintiff's application package was not reviewed and rejected simply based on SSA Traina's prior non-certifications regarding the LCIP. Upon information and belief, Plaintiff's application was subjected to criteria not used for any of the other applicants. Likewise, Plaintiff's supervisory aspirations have been halted and he is prevented from competing for such positions.

75. On 04/30/2004, IRS, Criminal Investigation's POD, located in Brockton, MA was closed. The decision to officially close the Brockton POD was based in part, if not entirely on the circumstances surrounding the Plaintiff's E.E.O. involvement. In less than two years after the Brockton POD was officially opened and more than $50,000.00 expended on renovations, the office was closed preventing the Plaintiff's re-assignment.

76. On 05/21/2004, Plaintiff was denied a short-term supervisory acting assignment by a SSA Robert Howe. Based on information and belief, Plaintiff was not considered for said assignment because of the retaliatory actions taken against him, which have since destroyed his work reputation.

77. On or about 05/21/2004, Plaintiff was denied the opportunity to apply to the current LCIP by SSA Howe, and as such he is prevented from participating in the LDP for supervisory positions. Based on information and belief, Plaintiff's request was not considered due to his tarnished reputation as a result of his E.E.O. participation.

Wherefore, the Plaintiff prays for judgment against the Defendant for damages and such other relief as this Court deems just, to include;

1. That the Court issues an order to the Defendant to cease and desist from unlawful discrimination against the Plaintiff.

2. That the Court admonish all individuals responsible for said discriminatory acts against the Plaintiff as allowable;

3. That the Plaintiff's annual performance appraisals for the periods ending 02/15/2003 and 09/30/2003 be changed to reflect ratings of Exceeds Fully Successful.

4. That any and all counseling letters issued to the Plaintiff by SSA Bruce Traina be removed from the Plaintiff's personal files and destroyed accordingly;

5. That the Plaintiff's current step be increased to a level consistent with his promotion to a GS 13 in 04/1998. Additionally, an awarded of related back-pay for loss of salary, retroactive to 04/1998, be granted;

6. That the Plaintiff be awarded a pay increase to that of a GS 14 SSA. Additionally, an award of related back-pay for loss of salary, retroactive to 2002 as well as an award to reflect such step adjustments (2002-current), be granted;

7. That the Plaintiff be awarded monetary damages for emotional distress and mental anguish;

8. That the Court order and adjudge the Defendant to pay the Plaintiff's attorneys fees, legal costs and cost of the suit with interest as provided by law.

## JURY TRIAL DEMAND

The Plaintiff hereby makes demand for a trial of all issues before a jury pursuant to the Statutes and Constitution of the United States.

January 13, 2005
Date

Respectfully submitted,

Anthony P. Sibilia

11

%JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Anthony P. Sibilia

**DEFENDANTS**
John W. Snow, Secretary of the Treasury

(b) County of Residence of First Listed Plaintiff: Bristol
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Anthony P. Sibilia, Unrepresented Plaintiff
10 Dean St., Mansfield, MA 02048
508-337-8714

Attorneys (If Known)

**05-10096 PBS**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury—Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury—Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | PERSONAL PROPERTY | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus: | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [X] 442 Employment | [ ] 530 General | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 535 Death Penalty | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Discrimination Based on Retaliation, Title 42, U.S.C., Section 2000e-3

**VII. REQUESTED IN COMPLAINT:**
[ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)_____
   Anthony P. Sibilia  v.  John W. Snow, Sec. of the Treasury
   /Plaintiff/                              /Defendant/

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___  I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740,
             790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          * Also complete AO 120 or AO 121
                                                                                 for patent, trademark or copyright cases

   ___  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.                    **05cv10096 PBS**

   ___  V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)). __N/A__

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
                                                          YES ☐    NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC 2403)      YES ☐    NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                          YES ☐    NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?    YES ☐    NO ☒

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL DIVISION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).    YES ☐    NO ☒
   OR IN THE WESTERN DIVISION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)?(SEE LOCAL RULE 40.1(D)).
                                                          YES ☐    NO ☒

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN DIVISIONS OF THE DISTRICT?
                                                          YES ☐    NO ☒
   (a)  IF YES, IN WHICH DIVISION DOES THE PLAINTIFF RESIDE?_____

9. IN WHICH DIVISION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?_____

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL DIVISION;  YES ☐  NO ☐       OR WESTERN DIVISION;  YES ☐  NO ☐

11. ALTERNATIVE DISPUTE RESOLUTION - IS THIS CASE SUITABLE FOR ADR? IF SO, BY WHICH ADR?
    EARLY NEUTRAL EVALUATION ☐        MEDIATION ☐        SUMMARY JURY/BENCH TRIAL ☐
    MINI-TRIAL ☐                      OTHER ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Anthony P. Sibilia, Unrepresented Plaintiff__
ADDRESS __10 Dean St., Mansfield, MA 02048__
TELEPHONE NO. __508-337-8714__

(Category Form.wpd - 3/28/2000)