UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANTHONY P. SIBILIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) Civil Action No.: 05-10096-PBS | |
| JOHN W. SNOW, Secretary of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION AND LEAVE TO FILE OPPOSITION TO PLAINTIFF'S MOTION TO CEASE AND DESIST AND RESTRAIN

### INTRODUCTION

The defendant, John Snow, submits this memorandum in support of his Motion for Reconsideration and Leave to File Opposition to plaintiff's Motion to Cease and Desist and Restrain. This Court allowed the plaintiff's motion on August 17, 2005 because the defendant failed to file a timely opposition. The defendant now seeks to have the Court reconsider its order and allow the defendant to oppose the plaintiff's motion. The plaintiff motion must fail because it is, in effect, another claim of retaliation that the plaintiff must first administratively exhaust and cannot circumvent the process by styling his new retaliation claims as a "motion." Whereas there are other proper avenues for the plaintiff to seek relief (namely through the administrative process), the defendant respectfully requests that the Court allow the defendants Motion for Reconsideration and Leave to File Opposition and deny the plaintiff's Motion to Cease and Desist and Restrain.

## BACKGROUND

The plaintiff filed his Motion to Cease and Desist and Restrain on July 19, 2005. The defendant failed to timely oppose. On August 17, 2005 the Court granted the defendant's motion without opposition from the defendant. The defendant now seeks reconsideration from the Court and leave to file its opposition.[1] The plaintiff's Motion to Cease and Desist and Restrain is the product of plaintiff's unfounded belief that his supervisors are retaliating against him for EEO activities that occurred in 1996 (nearly ten years ago), despite the fact that none of his current supervisors had anything to do with plaintiff in 1996 and have absolutely no motive to retaliate against plaintiff. In the present motion, plaintiff had a meeting with his supervisors that the plaintiff viewed as too critical. The plaintiff attributes the negative evaluations of his work by his supervisors to retaliation and harassment. In the present instance, the plaintiff claims that he was "subjected to threatening and intimidating statements" made by his second-line supervisor, Assistant Special Agent in Charge David Bergen ("ASAC Bergen"), in retaliation for plaintiff's current complaint before the Court and for related participation in Equal Employment Opportunity ("EEO") proceedings. Motion to Cease and Desist and Restrain at 1. Specifically, the plaintiff points to five statements which he alleges were said to him during a meeting on July 17, 2005 by ASAC Bergen[2] as examples of the threats and harassment. According to David Bergen, however, the purpose of the July 17, 2005, meeting was to: 1) follow up on the closing of two criminal investigations and the related case evaluations; 2) provide the plaintiff with

---

[1] Counsel for the defendant inadvertently failed to respond to plaintiff's motion and apologizes to the Court for the inconvenience caused.

[2] ASAC Bergen acted as the IRS agency representative during the Mediation of plaintiffs complaint (05-10096-PBS). Motion to Cease and Desist and Restrain at 2.

feedback on his mid-year performance; 3) discuss with plaintiff his Law Enforcement Availability Pay ("LEAP") average; and 4) discuss with plaintiff his readiness to enter the Front Line Readiness Program ("FLRP")." *See* Exhibit 1, Declaration of David M. Bergen ¶ 3.

More specifically, ASAC Bergen informed plaintiff that two of his cases were closed due to plaintiff's inability to develop a criminal case. Declaration of David M. Bergen ¶ 4. ASAC Bergen informed the plaintiff that plaintiff had repeatedly represented to his supervisors that he was investigating a large narcotics and money laundering case. However, it turned out that most of the allegations made by the plaintiff were based on years old intelligence and questionable association of the subjects of this investigation with a now closed Organized Crime Drug Enforcement Task Force ("OCDETF") investigation. *Id*. at ¶ 5-6. ASAC Bergen informed plaintiff that SSA O'Briant was completing a case evaluation concerning the closed investigations, and that plaintiff's performance would be marked "less than fully successful" in a number of areas. *Id*. at ¶ 9; *see also* Exhibit 2, Form 6082 Case Evaluation. Rather than leave it unclear for the plaintiff, ASAC Bergen provided eight reasons at the meeting for his low evaluation. *Id*. at ¶ 11-16.

Furthermore, ASAC Bergen informed plaintiff that he had not yet demonstrated that he was ready to enter the FLRP program for management training based on the aforementioned evaluation and deficiencies. *Id*. at ¶ 25. However, ASAC Bergen informed plaintiff that "management would continue to work with him to give him the tools, training, and opportunity necessary for him to demonstrate his readiness for the management program." *Id*. at ¶ 27. Additionally, ASAC Bergen told plaintiff that while management will help, it will be plaintiff's responsibility to focus his efforts, and work to develop a variety of viable, high impact cases that

3

will demonstrate his knowledge of agency policy and procedures, and to work in cooperation with management to show his proficiency as a senior GS 13 special agent. *Id*. at ¶ 28. Because of his poor work performance, plaintiff was provided a "Plan of Action or Opportunity to Improve," which detailed several assigned tasks and review schedules to monitor the continuing progress of plaintiff's work. Declaration of David M. Bergen ¶ 20-23.

The plaintiff does not dispute that ASAC Bergen is his supervisor and entitled to evaluate his work performance.

## ARGUMENT

The plaintiff's Motion to Cease and Desist and Restrain is the product of plaintiff's unfounded belief that his supervisors are retaliating against him for EEO activities that occurred in 1996, despite the fact that none of his current supervisors had anything to do with plaintiff in 1996 and have absolutely no motive to retaliate against plaintiff. The plaintiff attributes any negative evaluations of his work by his supervisors to retaliation and harassment. In the present circumstance, the plaintiff turns an otherwise legitimate interaction with his supervisors into a incident of harassment because the plaintiff is unhappy with the comments made to him. To "prove" his point, plaintiff takes five statements made by his supervisor out of context and alleges harassment and intimidation. In essence, the plaintiff is alleging a new claim of retaliation. The plaintiff should not be granted the extraordinary relief of an injunction forcing the IRS to change his supervisors from Boston to Rhode Island without first having to exhaust his claim in the administrative process.[3] The plaintiff still is able to bring his claims

---

[3] In the First Circuit, it is well settled that to be entitled to the extraordinary remedy of preliminary injunctive relief, plaintiff has the formidable burden of establishing:

administratively and should be made to do so, despite the defendant's error of not filing a timely opposition. The defendant's mistake does not absolve the plaintiff of his obligation to follow administrative procedures.

> **A.  The Plaintiff Cannot File a Motion for Relief in this Matter for Entirely Different Allegations of Retaliation Against Different Supervisors**

The plaintiff's motion is an entirely new set of allegations against his employer. Not only are the allegations new, but also the supervisors about which the plaintiff complains are new to this action. In his original complaint before this Court, the plaintiff alleges retaliation against a number of supervisors. However, ASAC Bergen and SSA O'Briant are not mentioned. In order to raise these new allegations, the plaintiff must first bring administrative claims and allow the agency some opportunity to review his claims.

A plaintiff alleging discrimination in federal employment must first exhaust her administrative remedies as a condition precedent to raising a claim in federal court. Brown v. G.S.A., 425 U.S. 820, 832 (1976); Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990).

---

> The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981. The Court of Appeals has repeatedly emphasized that each of these criteria must be independently satisfied in order to warrant the extraordinary remedy of a preliminary injunction. See, e.g., White v. Carlucci, 862 F.2d 1209, 1212 (1st Cir. 1989); LeBeau v. Spirito, 703 F.2d 639, 642 (1st Cir. 1983); Auburn News Co. v. Providence Journal Co., 659 F.2d 273, 277 (1st Cir. 1981), cert. denied, 455 U.S. 921 (1982); Coalition for Basic Human Needs v. King, 654 F.2d 838, 840-41 (1st Cir. 1981).

Plaintiff's motion, on its face, fails to meet this extraordinary burden.

Exhaustion requires complying with the EEOC regulations governing the processing of discrimination claims, 29 C.F.R. Sec. 1614.101, *et seq*., which include those regulations that require timely filing of an administrative complaint with the federal agency that purportedly engaged in the discrimination. 29 C.F.R. Sec. 1614.106. This is a prerequisite to suit under Title VII. Brown, 425 U.S. at 832; Jensen, 912 F.2d at 520. Consequently, one's failure to exhaust administrative remedies bars any subsequent civil action based on the alleged discriminatory act. Kwatowski v. Runyon, 917 F. Supp. 877, 882-883 (D. Mass.1996); see also Cano v. U.S. Postal Service, 755 F.2d 221, 223 (1st Cir. 1985).

The exhaustion requirement fulfills important Congressional purposes by requiring employees to attempt to resolve discrimination complaints within their respective agencies. Brown, 425 U.S. at 832. As a general rule, "failure to exhaust calls for a dismissal of action," Kreps, 654 F.2d at 777.

Pursuant to regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), a federal employee begins the process of pursuing her administrative remedies by contacting an EEO counselor within 45 days of the date on which she knew or should have known of the allegedly discriminatory or retaliatory event. 29 C.F.R. § 1614.105(a)(1)(2002); Cones v. Shalala, 945 F. Supp. at 346.

Here, Plaintiff failed to exhaust his administrative remedies for a claim of retaliation because he did not file a formal complaint for retaliation prior to raising it in a motion before this Court. The plaintiff is still within the 45 day period and must file an administrative claim.

Although the defendant failed to respond to the plaintiff's initial letter motion, the defendant believes that this Court should reconsider its ruling because of the highly unusual

6

relief sought (transferring of supervision to a different state) and the highly irregular procedural posture of the motion (a new allegation raised as a motion for injunction). As explained above, the plaintiff must bring this matter before the agency before he may have this Court review his claims. The plaintiff's obligations to pursue administrative remedies first is not excused simply because the defendant did not timely oppose the plaintiff's motion. Moreover, the relief sought and granted by the Court will impose a huge burden on the agency, and will make supervision of the plaintiff highly difficult. As an alternative to the relief granted, the plaintiff may raise his claims in the usual manner before the EEOC because the plaintiff is still within the 45 day period.

## **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that this Court reconsider its ruling on the plaintiff's Motion to Cease and Desist and Restrain and deny plaintiff's motion or grant the plaintiff the opportunity to raise the matter before the agency.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Jeffrey M. Cohen
Jeffrey M. Cohen
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel. No. (617) 748-3100
Facsimile (617) 748-3969

**CERTIFICATE OF SERVICE**

I certify that on August 18, 2005, I caused a copy of the foregoing Motion to be served on Plaintiff by first class mail, postage pre-paid to:

Anthony P. Sibilia
10 Dean Street

Mansfield, MA 02048

    /s/ Jeffrey M. Cohen
Jeffrey M. Cohen
Assistant U.S. Attorney

# EXHIBIT 1

AUG.18'2005 11:38 17815858201 WE PRINT TODAY Case 1:05-cv-10096-PBS   Document 15-2   Filed 08/18/2005   Page 2 of 8  P.002/006

AUG-18-2005 10:27         GENERAL LEGAL SERVICES                    917 421 3946    P.02

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY P. SIBILIA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN W. SNOW, Secretary of the Treasury,<br><br>Defendant. | Civil Action No.: 05-10096-PBS |

### DECLARATION OF DAVID M. BERGEN
### ASSISTANT SPECIAL AGENT IN CHARGE
### INTERNAL REVENUE SERVICE- BOSTON

I, David M. Bergen, do state and declare as follows:

1. I am the Assistant Special Agent In Charge at the Internal Revenue Service in Boston, Massachusetts. This declaration is submitted in support of the United States Opposition to Plaintiff's Motion to Cease and Desist and is based on personal knowledge obtained by me in the course of my official duties and based on contemporaneous notes I took during a meeting with SA Sibilia on July 15, 2005. [handwritten: 15 DMB]

2. On July 15, 2005 I meet with Special Agent Anthony Sibilia, ("SA Sibilia") and Supervisory Special Agent Judy O'Briant ("SSA O'Briant") in my office on the 13th floor of the JFK Building.

3. The purpose of this meeting was to discuss the following issues: 1 1) follow up on the status/closing of two criminal investigations and the related case evaluations; 2) provide SA Sibilia's with feedback on his mid-year performance since the beginning of his evaluation period (10/01/04 through 09/30/05); 3) discuss with SA Sibilia's his LEAP average as of 06/30/05; and

4) discuss with SA Sibilia his readiness to enter the Front Line Readiness Program ("FLRP").

4. I explained to SA Sibilia that two of his cases were closed due to lack of criminal investigation potential.

5. SA Sibilia had repeatedly reported to his supervisors that one of the investigations was a high impact OCDETF case and that he had completed or was completing an in-depth financial investigation and analysis.

6. A case review and in-depth questioning of SA Sibilia disclosed that most of the allegations were based on years old intelligence and questionable association of the subjects of this investigation with a now closed OCDETF investigation.

7. Review by SSA O'Briant and OCDETF Coordinator Mike Ballback disclosed minimal provable narcotic and money laundering activity.

8. Bank account records obtained during the course of the investigation showed no suspicious activity. Real estate transactions, businesses, and business acquisitions were identified which indicated potential legitimate sources of income.

9. I explained to SA Sibilia that SSA O'Briant was in the process of preparing the Case Evaluation (Form 6082), which would be provided to him early next week. Based on our review of his work on the above referenced investigations, performance was less than fully successful in multiple Critical Job Elements including Critical Job Element ("CJE") II, Customer Satisfaction- Knowledge and CJE V, Business Results- Efficiency.

10. SA Sibilia failed to demonstrate his knowledge of legal and accounting principles to assess investigative options and his working knowledge of the IRM.

11. SA Sibilia failed to recognize the lack of criminal potential in this investigation

2

and failed to understand IRM guidelines concerning CI participation in a Title I (wiretap).

12. In addition, SA Sibilia failed to grasp the evidence or probable cause needed for any agency to obtain wiretap authorization.

13. For CJE V under Workload Management and Completes Work Timely, SA Sibilia repeatedly embellished or misrepresented the status and his progress on the OCDETF case to his SSA and to the Westport Police Department. Time and resources devoted to this investigation were not commensurate with the level of financial analysis and general progress.

14. SA Sibilia failed to recognize his primary role as an IRS investigator.

15. SA Sibilia claimed to have spent much of his time attending to establish narcotics as the SUA.

16. In excess of 1000 hours have been charged to this investigation resulting in minimal financial analysis, no suspicious transactions or provable illegal financial transactions, and only minimal, small quantity narcotic activity allegedly related to one of the subjects of this investigation.

17. I explained to SA Sibilia that a detailed Form 6082 outlining all performance deficiencies related to this investigation would be provided as soon as possible.

18. As part of the Mid-Year Review/Case Review, the following Plan of Action or Opportunity to Improve was provided to SA Sibilia:

19. SA Sibilia will complete a comprehensive Discontinued Report for the investigations due on 7/29/05.

20. SA Sibilia has been assigned a QRP investigation and he will:

   a.. develop a viable investigative plan

  b. conduct necessary interviews and obtain necessary documents

  c. obtain handwriting exemplars if warranted

  d. trace names and address used in the conspiracy

21. SSA O'Briant will conduct progress reviews at 30-day intervals for as long as she deems necessary.

22. SA Sibilia will evaluate fraud referrals and information items assigned to him in a timely and thorough manner.

23. SA Sibilia will attempt to develop a self-sustaining inventory of non-narcotic investigations.

24. As of 6/30/05, SA Sibilia's LEAP average was 8.83. I explained to SA Sibilia that although his LEAP average has risen slightly in recent months, his current average is unacceptable. If significant increases are not observed during the next 1-2 months, SSA O'Briant will assign additional work.

25. Finally, I explained to SA Sibilia that he has not demonstrated his readiness for the management program based on his performance during this evaluation period.

26. SA Sibilia's performance on the OCDETF investigation can be summarized as follows:

 1. SA Sibilia failed to recognize viable criminal potential or lack of criminal potential after spending 18 months developing this case.

 2. SA Sibilia failed to keep his managers and other agencies/departments involved and adequately informed of case weaknesses, prosecution potential, and investigative progress in general; and

4

3. SA Sibilia provided conflicting reports of his progress to date to SSAs, the OCDETF Coordinator, and his ASAC.

27. I explained to SA Sibilia that as I have stated on repeated occasions beginning February 2004, management would continue to work with him to give him the tools, training, and opportunity necessary for him to demonstrate his readiness for the management program. However, it will be his responsibility to focus his efforts, and work to develop a variety of viable, high impact cases that will demonstrate his knowledge of agency, policy and procedures, and to work in cooperation with management to show his proficiency as a senior GS 13 special agent.

28. SA Sibilia said that he did not agree with all of the comments related to his performance on the investigations; however, he understood the purpose of this meeting and that he may receive less than fully successful in one or more Critical Job Elements as they relate to his performance on this case. SA Sibilia said that he understood what is expected of him and the Plan of Action or Opportunity to Improve as outlined above.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this _18_ day of _AUGUST_, 2005, at _KINGSTON_, ~~Boston~~ DMB, MA.

David M. Bergen
Assistant Special Agent In Charge
Internal Revenue Service, Boston, MA
CRIMINAL INVESTIGATION

5

# EXHIBIT 2

# ASSESSMENT OF CLOSED GENERAL/SUBJECT SEIZURE/PRIMARY SUBJECT INVESTIGATION
## NARRATIVE APPRAISAL

| S/A | GS- | ☐ Primary Agent<br>☐ Secondary Agent | Investigation Name | Investigation Number | Level |
|---|---|---|---|---|---|
| ☐ Administrative Investigation | | ☐ Grand Jury Investigation | Disposition | | |
| Date Assigned | Dated Numbered | Dated Completed | Elapsed Days | | Total Hours |
| Years | | | Code Section<br>- | | Method of Proof |

## APPRAISAL

Use the following to describe performance:
  (5) **OUTSTANDING** - Exceeds all performance aspects of the overall standard;
  (4) **EXCEEDS FULLY SUCCESSFUL** - Exceeds more than half of the performance aspects of the standard and meets the other performance aspects;
  (3) **FULLY SUCCESSFUL** - Meets all performance of the aspects;
  (2) **MINIMALLY SUCCESSFUL** - Fails one performance aspect;
  (1) **UNACCEPTABLE** - Fails two or more performance aspects.

Note:   Specific work traits must be described in detail as to how they exceed or fall below the duties and responsibilities of the agent's position description

| Item | Rating | Item | Rating |
|---|---|---|---|
| Employee Satisfaction - Employee Contribution | | Business Results - Efficiency | |
| Customer Satisfaction - Knowledge | | | |
| Customer Satisfaction - Application | | | |
| Business Results - Quality | | | |

## NARRATIVE APPRAISAL
(Including Recommendations for Improvement Where Necessary)

**Employee Satisfaction - Employee Contribution**


**Customer Satisfaction - Knowledge**


**Customer Satisfaction - Application**


**Business Results - Quality**


**Business Results - Efficiency**


| Supervisory Special Agent's Signature | Date | Agent's Signature (Acknowledging Discussion) | Date |
|---|---|---|---|
| | | | |

Form **6082**  (Rev. 9-97)    Cat. No. 43066E    Department of the Treasury - Internal Revenue Service