UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY P. SIBILIA,
    Plaintiff

v.

JOHN W. SNOW,
SECRETARY OF THE TREASURY,
    Defendant

CIVIL ACTION
NO.
05-10096-PBS

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION TO CEASE AND DESIST AND RESTRAIN

I, Anthony P. Sibilia, *pro se* plaintiff, submit this opposition motion to defendant's Reconsideration Motion. On or about 08/15/2005, this Court allowed my motion to Cease and Desist and Restrain. I filed the motion on 07/18/05, which was not opposed by the defendant. The defendant's motion for reconsideration states that I must file new claims in the administrative process and that I cannot circumvent the process by filing an extraordinary motion.

My complaint, Civil Action No. 05-CV-10096-PBS, is based on unlawful harassment, disparate treatment and hostile work environment in retaliation for my participation in EEO matters. The complaint is based on a series of retaliation claims. Which stem from my original involvement with the EEOC in October 1996, when I filed a retaliation claim against my then supervisor, Donato Niro. At that time, I stated Niro's actions and threats against me were made in retaliation of my extensive participation in a co-worker, Special Agent (SA) Carrie Marra's, sexual discrimination complaint against Niro. My EEO participation continued from 1996 through 1999, during SA Marra's civil complaint. Immediate and successive Special Agent in Charge's (SAC's) and Assistant Special Agent in Charge's (ASAC's) and supervisors thereafter have demonstrated a clear pattern of continuous and ongoing retaliation by denying my re-assignment, refusing my promotions and threatening my livelihood. The respondent's articulated reasons for these events are a pretext for discrimination where a clear pattern of aggressive and confrontational harassment and deferential treatment can be shown through a specific chain of command.

As I have stated, my complaint is based on a continuous and ongoing pattern of harassment, which includes claims of hostile work environment. The threatening and intimidating statements as identified in my Motion to Cease and Desist and Restrain are part and parcel of my hostile work environment claim and demonstrate a clear pattern of on-going aggressive and confrontational harassment to discourage my further EEO involvement and to punish me for my prior EEO involvement. Importantly, these types of statements serve to impede and/or interrupt protected activities and have a potentially chilling effect on the ultimate tool, which employees such as myself have to enforce EEO laws, the filing of a complaint. Similarly, retaliatory statements in matters concerning civil complaints, as in the matter at hand, also have the potential to cause irreparable harm to the public interest in enforcing laws by deterring others from filing similar charges. The agency has a continuing duty to promote the full realization of EEO laws and policies.

In my Motion to Cease and Desist and Restrain I identified five statements that formed the basis of same. Said statements were made to me during a meeting (on 07/15/2005) with my first and second-line supervisors, Supervisory Special Agent (SSA) Judy O'Briant and Assistant Special Agent in Charge (ASAC) David Bergen respectively. Although I was told by SSA O'Briant that the meeting on 07/15/05 was for my mid-year review, the actual content of the meeting was nothing more than a vehicle used by ASAC Bergen to deliver a message aimed at my participation in EEO matters and in particular my complaint (05-CV-10096-PBS). See attached Declaration Statement in Support of my Motion to Oppose Defendant's Reconsideration Motion.

As part of the government's reconsideration motion, they submitted a declaration/statement from ASAC Bergen. According to ASAC Bergen, the purpose of the aforementioned meeting (07/15/05) was to: 1) follow up on the closing of two criminal investigations and the related case evaluations; 2) provide the plaintiff with feedback on his mid-year performance; 3) discuss with plaintiff his Law Enforcement Availability Pay (LEAP) average; and 4) discuss with plaintiff his readiness to enter the Front Line Readiness Program (FLRP). The government argues that my Motion to Cease and Desist and Restrain is a product of my unfounded belief that my supervisors are retaliating against me for EEO activities. Furthermore, the government argues that I've taken

2

the above identified statements out of context and that those statements were an otherwise legitimate interaction with my supervisors.

In regards to ASAC Bergen's declaration statements, the governments articulated reasons for these events are a pretext for discrimination where a clear pattern of aggressive and confrontational harassment and deferential treatment can be shown through a specific chain of command. ASAC Bergen's declaration statements do not support the facts surrounding the 07/15/2005 meeting. ASAC Bergen's explanations as to the purpose of the 07/15/05 are at best misleading, and the content of said meeting certainly did not merit and/or rise to the level of ASAC involvement. That is, the discussions that centered around ASAC Bergen's meeting on 07/15/05 were merely to: 1) provide me with a due date for the submission of a Discontinued Special Agents Report concerning the two criminal cases in question, 2) discuss with me a case appraisal concerning said cases, which at that time was not completed by SSA O'Briant, 3) provide me with my Law Enforcement Availability Pay (LEAP) average, and 4) inform me that I was not ready to enter the Front Line Readiness Program (FLRP). Additionally, in regards to items 1, 2 and 3, each one of these items were previously addressed/discussed with me by SSA O'Briant prior to the 07/15/05 meeting, which further supports my assertion that the reasons proffered are not the true reasons for said meeting.

It is important to note that in regards to item 4 above, the FLRP is an established IRS/Criminal Investigation program for agents interested in pursuing supervisory positions. In order to be certified for entry into the FLRP an agent has to first apply to the program and their application package has to be approved by their first and second-line supervisors. I last applied to the FLRP on 02/11/05. On 02/18/05 I was told by my SSA at the time that my application for the FLRP was not certified. Since that time, 02/05, I have not applied to the FLRP nor have I indicated to any of my subsequent SSA's (to include SSA O'Briant) that I was still pursuing a management career/FLRP. However, without any inquiry relative to the FLRP from me, ASAC Bergen informs me, during the meeting on 07/15/05 that I was not ready to enter the FLRP, despite the fact that I did not apply to said program or show any type of interest in same. The disclosure by ASAC Bergen that I was not ready to enter management training, despite my lack of interest, served only to harass and discredit my performance in front of my new SSA (Judy O'Briant).

That is, it's management's responsibility to provide interested agents the opportunity to progress into supervisory positions and as such, if ASAC Bergen and/or SSA O'Briant believed that I wanted to pursue a management track, they would have provided me with specific actions necessary to accomplish such desires, or at the least provide me with the reasons that I was not ready to pursue the FLRP, which was not the case.

As I have stated in my Motion to Cease and Desist and Restrain, subsequent to ASAC Bergen's discussion relative to the FLRP (on 07/15/05) he made threatening and intimidating statements to me, which he initiated by stating that he may be out of place by making those statements and that they may sound demeaning. The government argues that the statements in question were taken out of context. I contend that the following statements:

"You've fought the good fight against management"

"Ten years from now, I don't want you to look back with regret at the things you are doing now." "Ten years from now, I hope you are in management, which is up to you and can happen if you do the right things now."

"You're obsessing about things."

"You're doing things here (motioning with his hands to one side of his body) when you should be doing things here (motioning with his hands to the other side of his body)-in order to further your career."

"Your performance may be negatively evaluated concerning a few critical elements, to include communication and timeliness. However, the evaluation is not completed and may not reflect a down-grade at all"…it is up to you to bring the evaluation up to levels of satisfactory.

were not taken out of context and were made in retaliation for my ongoing participation in EEO matters. They revolve around my civil complaint (05-10096-PBS), they pertain to said complaint and were made in an attempt to quell same.

Four days prior to ASAC Bergen's statements, 07/11/05, ASAC Bergen acted as the IRS representative during a mediation meeting concerning my complaint (05-10096-PBS). During said mediation meeting I provided lengthy and detailed information concerning discriminatory acts that have been taken against me by specific supervisory personnel in retaliation for my EEO

4

participation. For reasons that are suspect and do not support his involvement, ASAC Bergen called a meeting with me on 07/15/05 (on the Friday before my SSA was scheduled to be away for a two week training class) to address issues that had previously been addressed with me by my SSA.

Subsequent to the meeting on 07/15/05 and subsequent to my motion to Cease and Desist and Restrain, I received counseling memo's concerning performance and time from my SSA, Judy O'Briant. Four months earlier (March 2005-the month of my mid-year), during an operations review conducted by ASAC Bergen, my work, performance and time were all addressed by my SSA at the time and no such deficiencies were identified (and nor was my interest in the FLRP addressed by my SSA and/or ASAC). Similar reviews were conducted on me by SSA O'Briant relative to my work performance and again no deficiencies were disclosed and/or identified. It is apparent that as a result of the meeting on 07/15/05, SSA O'Briant has taken a negative course of action against me that is contrary to her previous position relative to my performance. Currently I am required to provide detailed work-plans to SSA O'Briant, on a bi-weekly basis, something that I have been required to do only once during my career, approximately 13 years ago by the SSA that initiated my original EEO participation, Donato Niro. Likewise, I do not know of any agents in my field office that are currently preparing or have or had to prepare similar reports.

As stated, the defendant's motion for reconsideration states that I must file new claims in the administrative process and that I cannot circumvent the process by filing an extraordinary motion. As I have stated, the aforementioned events are part and parcel of my hostile work environment claim and have been included in my ongoing EEOC claim (TD 04-2407). The events as identified in this motion echo my civil complaint, in that, subsequent to my engagement in a protected activity, which an agency official was aware of, I was shortly thereafter disadvantaged by adverse actions. In the matter at hand, I engaged in a mediation meeting concerning my civil complaint and four days later I was subjected to unprovoked threatening and intimidating statements by the same individual who acted as the agency representative for said mediation meeting. Likewise, within days of the 07/15/05 meeting, I subsequently received counseling memo's concerning my performance and time and I am further required to provide detailed work-plans concerning my work.

ASAC Bergen's statements and the questionable circumstances relative to his meeting on 07/15/05, supports such behavior to be hostile and/or abusive. As I have stated, subsequent to the 07/15/05 meeting, as well as my Motion to Cease and Desist and Restrain, I received counseling memo's concerning performance and time. Prior to 07/15/05 my performance and time were addressed with me by my SSA's and at no time, did such discussions dictate any type of negative evaluations and/or memorandums.

The defendant's motion for reconsideration states that I must file new claims in the administrative process and that I cannot circumvent the process by filing an extraordinary motion. I am not circumventing the EEO process, to the contrary, I have engaged in a process that has created for me the very environment that it was designed to prevent. My Motion to Cease and Desist and Restrain is an attempt to engage said process without interference. The government also asserts that granting this motion will impose a huge burden on the agency, and will make my supervision difficult. My supervision and oversight will be no more difficult than any of the other agents in the Boston Field Office (BFO) that are currently assigned to non-supervised post of duties (PODs). There are currently 13 agents in the BFO that are currently assigned to non-supervised PODs. Additionally, four of these agents are assigned to PODs in states that are different than their respective supervisors.

Throughout my career I have earned various accolades concerning my work and my involvement with fellow-agents. However, during the past several years, I have been subjected to various negative actions taken by specific supervisors who have been directly involved in complaints that I have been party. These supervisors have taken retaliatory actions against me that are very similar to the actions as identified herein. The statements made to me by ASAC Bergen, demonstrate a continued pattern of ongoing retaliation that has manifested into a hostile work environment. The agency's articulated reasons for these events are a pretext for discrimination where a clear pattern of aggressive and confrontational harassment and deferential treatment can be shown through a specific chain of command.

Respectfully submitted,

*[signature]*

Anthony P. Sibilia, *pro se*

Date: 08/28/05

## CERTIFICATE OF SERVICE

I certify that on August 29, 2005, I caused a copy of the foregoing to be served on the Defendant's representative, by hand delivery at:

John Joseph Moakley Federal Courthouse
Attn: Jeffrey M. Cohen, Assistant U.S. Attorney
One Courthouse Way, Suite 9200
Boston, MA 02210
(617)748-3100