UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY P. SIBILIA,
      Plaintiff

CIVIL ACTION
NO.
05-10096-PBS

v.

JOHN W. SNOW,
SECRETARY OF THE TREASURY,
      Defendant

### DECLARATION OF SPECIAL AGENT ANTHONY P. SIBILIA

    I, Anthony P. Sibilia, *pro se* plaintiff, do state and declare as follows:

1.    I am a Special Agent with IRS, Criminal Investigation, currently assigned to the Boston Field Office (BFO). This declaration is submitted in support of my Opposition Motion to the Defendant's Motion For Reconsideration and Leave to File Opposition to my Motion to Cease and Desist and Restrain.

2.    On or about October 1996 I provided favorable testimony to a co-worker (Special Agent Carrie Marra) in her sexual discrimination complaint against our then supervisor, Donato Niro. As a result of my involvement in said matters, I filed an EEO complaint against Niro. In that complaint, I stated Niro's actions and threats against me were made in retaliation of my extensive participation in SA Marra's sexual discrimination complaint against Niro. My EEO participation concerning SA Marra's complaint continued from 1996 through 1999. SA Marra's complaint was settled sometime in 1999 and in her favor. My participation in these matters formed the basis of my civil action, 05-CV-10096-PBS

3.    On 02/11/05 I applied to the Front Line Readiness Program (FLRP) for the opportunity to apply for management positions. On 02/18/05 I was informed by my SSA at that time, Robert Howe that my FLRP application was not certified and as a result, I can not apply/compete for supervisory type positions. Since 02/11/05 I have not applied to the FLRP, nor have I indicated to any of my SSA's that I am interested in pursuing management positions.

4.    In or about March 2005, Assistant Special Agent in Charge David Bergen conducted an Operational Review of my work-group. At that time my Supervisory Special Agent (SSA), Robert Howe, reviewed my work/performance and time. The results of said review did not disclose and/or identify any deficiencies concerning my work performance.

5.    My evaluation period runs from October 1st through September 30th, as such, my mid-year is March.

6.    Sometime in May 2005, Judy O'Briant became my SSA.

7.    On or about May 27, 2005, my SSA, Judy O'Briant, conducted a case review with me relative to two criminal cases that I was assigned. No related performance deficiencies were disclosed and/or identified to me by SSA O'Briant relative to said cases reviews.

8.    On July 7, 2005, I was told by my SSA, Judy O'Briant, that it was determined that the previously identified criminal cases that I was assigned were to be closed and as such, a Discontinued Special Agents Report had to be prepared as well as the related forms necessary to close out said investigations.

9.    On July 11, 2005, I participated in mediation meeting concerning my civil complaint (05-10096-PBS). ASAC David Bergen attended the meeting as the agency official. During said mediation meeting I provided lengthy and detailed information concerning discriminatory acts that have been taken against me by specific supervisory personnel in retaliation for my EEO participation.

10.    On July 12, 2005, I had a meeting with my SSA, Judy O'Briant, relative to my work-load and time. At that time, SSA O'Briant informed me that I should be aware of my LEAP average and informed me to let her know if I needed additional work.

11.    On 07/15/05 I had a pre-arranged meeting with my SSA and ASAC, Judy O'Briant and David Bergen respectively. The meeting was at the request of ASAC Bergen. During the

2

meeting ASAC Bergen made the following threatening and intimidating statements to me, which he initiated by stating that he may be out of place by making the statements and they may sound demeaning:

"You've fought the good fight against management"

"Ten years from now, I don't want you to look back with regret at the things you are doing now." "Ten years from now, I hope you are in management, which is up to you and can happen if you do the right things now."

"You're obsessing about things."

"You're doing things here (motioning with his hands to one side of his body) when you should be doing things here (motioning with his hands to the other side of his body)-in order to further your career."

"Your performance may be negatively evaluated concerning a few critical elements, to include communication and timeliness. However, the evaluation is not completed and may not reflect a down-grade at all"...it is up to you to bring the evaluation up to levels of satisfactory.

12.    Prior to making the above statements, ASAC Bergen's discussions with me revolved around four items, 1) I was provided a due date for the submission of a Discontinued Special Agents Report concerning two criminal cases that were previously closed; 2) I was informed that the case appraisals concerning said criminal cases were not completed and although they were not completed, I was told by ASAC Bergen that those evaluations may or may not contain some ratings of minimally successful; 3) I was provided with my Law Enforcement Availability Pay (LEAP) average; and 4) I was informed that I was not ready to enter the Front Line Readiness Program (FLRP).

13.    On 07/18/05 I received case appraisals concerning said criminal cases from my SSA, Judy O'Briant. The appraisal contained false and misleading statements.

14.    Subsequent to the meeting on 07/15/05, I was provided counseling memo's concerning my performance and time from my SSA, Judy O'Briant. Prior to the meeting on 07/15/05, I met

3

with my SSA, Judy O'Briant, concerning my performance and time and at not time was I informed that my work performance and/or time were anything less than fully successful.

15.    On August 3, 2005, I met with my SSA, Judy O'Briant to discuss said performance issues. During that meeting, SSA O'Briant admitted that various statements that she made relative to my performance, as identified on said case appraisals, were in fact not accurate.

16.    On August 3, 2005, I was instructed by my SSA, Judy O'Briant, that I am required to prepare bi-weekly (every two weeks) work-plans detailing my work relative to cases that are assigned to me. I do not know of any other agent in the BFO that has to prepare similar documents to their SSA. The last time I was required to prepare similar documents was approximately 13 years ago by my then SSA, Donato Niro.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 28th day of August, 2005, in Mansfield, MA.

Anthony P. Sibilia
Special Agent
IRS, Criminal Investigation

4